IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| RAYMOND SCHWAB, et al., | |
| Plaintiffs, | |
| v. | Case No. 16-CV-4033-DDC-KGS |
| STATE OF KANSAS, et al., | |
| Defendants. | |

## MEMORANDUM AND ORDER

Plaintiffs Raymond and Amelia Schwab[1] bring this lawsuit against the State of Kansas

("Kansas") and various state officials as well as private entities and private individuals.

Plaintiffs' First Amended Complaint[2] generally alleges civil rights violations. *See* Doc. 9.

Plaintiffs assert that Kansas removed five of their six children from their custody citing Mr.

Schwab's use of medical marijuana as the basis for the removal. Plaintiffs contend that Mr.

Schwab has a constitutional right to use medical marijuana and that Kansas' laws prohibiting

marijuana use (and the State's removal of the children based on his violation of those laws)

infringe on that purported right. Plaintiffs also assert that they have a fundamental constitutional

right to make decisions about the care, custody, and control of their children. They contend that

Kansas has infringed upon that right by removing the children from plaintiffs' custody. Based

on these legal theories, plaintiffs seek: (1) a declaratory judgment that Mr. Schwab has a

fundamental right to use medical marijuana to treat post-traumatic stress disorder; (2) a

---

[1]     The First Amended Complaint (Doc. 9) also names Tyler Scott Allison, the adult child of
Raymond and Amelia Scott, as a plaintiff. Because Mr. Allison had neither paid the filing fee nor sought
leave to proceed *in forma pauperis*, Magistrate Judge K. Gary Sebelius ordered him to do one or the other
by July 26, 2016. Doc. 68. Mr. Allison filed a motion for leave to proceed *in forma pauperis* on July 25,
2016, which Judge Sebelius recently granted. *See* Docs. 76, 78.

[2]     The First Amended Complaint (Doc. 9) is currently is the operative Complaint in the case.

declaratory judgment that plaintiffs have a fundamental right to make decisions about the care, custody, and control of their children that cannot be abrogated because Mr. Schwab used medical marijuana; and (3) an injunction prohibiting defendants from depriving them of custody of their children and prohibiting defendants from keeping their children in the foster care system where, plaintiffs contend, they face a danger of abuse.  Doc. 9 at 16–17.

Plaintiffs' First Amended Complaint names 18 defendants.  Most of the defendants have responded to plaintiffs' First Amended Complaint by filing motions to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  Two defendants have filed motions to dismiss under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction and Fed. R. Civ. P. 12(b)(5) for insufficient service of process.[3] Plaintiffs did not submit timely responses to any of these motions, with one exception.[4]  Instead, plaintiffs filed a Motion for Leave to File an Amended Complaint (Doc. 58), attaching a proposed Second Amended Complaint (Doc. 58-1).

Plaintiffs' proposed Second Amended Complaint seeks to add nine more defendants to the case.  It removes the claims from the First Amended Complaint asserting a purported constitutional right to use medical marijuana, and, instead, alleges civil rights claims under 42 U.S.C. §§ 1983 and 1985 for constitutional violations arising from the removal of plaintiffs' children from their custody.  These alleged constitutional violations include claims of unlawful search and seizure and fabrication of evidence.  The proposed Second Amended Complaint also asserts state law claims for false light, public disclosure of private facts, and slander that are

---

[3]     The remaining defendants have obtained an extension of time to answer until August 9, 2016, or 14 days after plaintiffs file a Second Amended Complaint.  Doc. 71.

[4]     On July 25, 2016, plaintiffs filed a response "seek[ing] to cover all subject matter contained within the various documents filed by the defendants."  Doc. 75 at 3.  Although not a timely response to most of the pending motions, the court considers plaintiffs' recent filing in reaching its decision here.

based on facts that arise from the removal of plaintiffs' children from plaintiffs' custody and the court proceedings that followed.  The proposed Second Amended Complaint seeks monetary damages for the alleged civil rights violations.  Like the First Amended Complaint, it also seeks an injunction prohibiting defendants from depriving plaintiffs of custody of their children and prohibiting defendants from placing their children in danger of abuse in the foster care system.

Several defendants have filed responses opposing plaintiffs' Motion for Leave to File an Amended Complaint.  They argue that plaintiffs' proposed amendments are futile because they fail to correct the deficiencies in plaintiffs' First Amended Complaint, as described in their various motions to dismiss.

The court first addresses the two motions to dismiss under Rules 12(b)(2) and 12(b)(5) in Part I, below.  Next, the court addresses Plaintiff's Motion for Leave to File an Amended Complaint in Part II, below.  As explained in detail by the rest of this Order, the court concludes that defendants' futility arguments are well-founded.  Nevertheless, the Court grants plaintiff leave to file a revised Second Amended Complaint—one that corrects the deficiencies identified in this Order—within 30 days of the date of this Memorandum and Order.  The court also denies as moot the remaining motions to dismiss in Part III, below.

## I.    Defendant Riley County, Kansas' Motion to Quash Service and/or Motion to Dismiss (Doc. 41) and Defendant Blake Robinson's Motion to Dismiss (Doc. 52)

Defendants Riley County, Kansas ("Riley County") and Blake Robinson ("Robinson") move for dismissal under Fed. R. Civ. P. 12(b)(2) (claiming no personal jurisdiction exists) and Fed. R. Civ. P. 12(b)(5) (claiming insufficient service of process) because, they contend, plaintiffs did not serve them with process as required by the federal rules or Kansas statutes.  *See* Docs. 41, 52.

Because plaintiffs proceed *in forma pauperis*, the district court must serve process for them.  *See Kelly v. Wilson*, 426 F. App'x 629, 631 (10th Cir. 2011) (citing *Olsen v. Mapes*, 333 F.3d 1199, 1204 (10th Cir. 2003)).  The court complied with that rule here by ordering the Clerk to issue summonses for defendants and the United States Marshal to effect service of the summonses and copies of the Complaint on all defendants.  Doc. 8 at 2.  The court also ordered plaintiffs to file a notice providing the addresses where the United States Marshal's Service could serve each named defendant.  *Id.*  Following the court's directive, plaintiffs filed a Notice providing addresses for all defendants, including Riley County and Robinson.  Doc. 10 at 2.

Plaintiffs, through the United States Marshal's Service, sent the summonses and copies of the Complaint by certified mail to Riley County and Robinson at the addresses plaintiffs provided in their Notice.  *See* Docs. 10, 22, 23.  Riley County asserts that the person who signed for the summons and Complaint is a receptionist for the Riley County Attorney's Office and has no authority to accept service on behalf of Riley County.  Robinson asserts that plaintiffs sent the summons and Complaint to his business address, not his residence or usual place of abode, as required by the federal and state rules.  Robinson also states that the return receipt is signed by Nadeen Powell, and he asserts that the return receipt provides no explanation of the signer's relationship to Robinson.

Fed. R. Civ. P. 4 governs service of process in federal actions.  *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987).  The personal service requirements of this rule "serve[ ] two purposes:  notifying a defendant of the commencement of an action against him and providing a ritual that marks the court's assertion of jurisdiction over the lawsuit."  *Okla. Radio Assocs. v. F.D.I.C.*, 969 F.2d 940, 943 (10th Cir. 1992) (citations omitted).  "Rule 4 service of process provides the mechanism by which a court having venue and jurisdiction over

the subject matter of an action asserts jurisdiction over the person of the party served." *Id.* (citing *Omni Capital Int'l*, 484 U.S. at 104 (further citations omitted)).

"A federal court lacks personal jurisdiction over a defendant if service of process is insufficient under Rule 4." *Hagan v. Credit Union of Am.*, No. 11-1131-JTM, 2011 WL 6739595, at *1 (D. Kan. Dec. 22, 2011) (citation omitted). Motions to dismiss under Rule 12(b)(2) and 12(b)(5) thus go hand-in-hand. A Rule 12(b)(5) motion to dismiss based on insufficient service of process "challenges the mode or lack of delivery of a summons and complaint." *Oltremari by McDaniel v. Kan. Soc. & Rehabilitative Serv.*, 871 F. Supp. 1331, 1349 (D. Kan. 1994) (citations and internal quotation marks omitted). When a defendant moves to dismiss based on insufficient service of process under Rule 12(b)(5), the burden shifts to the plaintiff to make a prima facie showing that he served process properly. *Fisher v. Lynch*, 531 F. Supp. 2d 1253, 1260 (D. Kan. 2008) (citation omitted). When considering whether service was sufficient, a court may consider any "affidavits and other documentary evidence" submitted by the parties and must resolve any "factual doubt" in a plaintiff's favor. *Id.* (citation omitted).

Defendants Riley County and Blake Robinson argue that plaintiffs failed to serve them as Rule 4 requires. Rule 4(j)(2) provides that a party must serve a state or local government by: "(A) delivering a copy of the summons and of the complaint to its chief executive officer; or (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant." Fed. R. Civ. P. 4(j)(2). Kan. Stat. Ann. § 60-304(d)(1) requires a party to serve a county "by serving one of the county commissioners, the county clerk or the county treasurer." Kan. Stat. Ann. § 60-304(d)(1). Riley County asserts that plaintiffs' service on a receptionist at the Riley County Attorney's Office was improper because she is not the

county's chief executive officer, one of the county commissioners, the county clerk, or the county treasurer, and thus she lacks authority to accept service on behalf of Riley County.

Rule 4(e) provides that a party may accomplish service on an individual by: (1) delivery to the individual personally, (2) delivery at the individual's dwelling or usual place of abode, (3) delivery on the individual's authorized agent, or (4) following Kansas state laws governing service. *See* Fed. R. Civ. P. 4(e). Kansas law allows for service by certified mail "to an individual at the individual's dwelling or usual place of abode," but the Kansas statutes do not authorize service at the individual's business address unless the party files a "a return of service stating that the return receipt delivery to the individual at the individual's dwelling or usual place of abode was refused or unclaimed . . . ." Kan. Stat. Ann. §§ 60-303(c)(1), 304(a). Robinson asserts that plaintiffs' service was defective because they served the summons and Complaint at his business address and never attempted to serve him at his dwelling or usual place of abode, as the rules require.

The court agrees with Riley County and Robinson. Plaintiffs' service failed to satisfy the technical requirements of Rule 4. Even so, Kansas law requires only substantial compliance with service of process requirements. Kan. Stat. Ann. § 60-204 provides:

> Substantial compliance with any method of serving process effects valid service of process if the court finds that, notwithstanding some irregularity or omission, the party served was made aware that an action or proceeding was pending in a specified court that might affect the party or the party's status or property.

Kan. Stat. Ann. § 60-204. The Kansas Supreme Court has defined "substantial compliance" as "compliance in respect to the essential matters necessary to assure every reasonable objective of the statute." *Fisher v. DeCarvalho*, 314 P.3d 214, 219 (Kan. 2013) (citation and internal quotation marks omitted). And the Kansas Supreme Court "read[s] the statutory language [of Kan. Stat. Ann. § 60-204] as suggesting that the legislature believed that the paramount objective

of any method of service of process is that 'the party served was made aware that an action or proceeding was pending in a specified court in which his or her person, status or property were subject to being affected.'" *Id.* at 220 (quoting Kan. Stat. Ann. § 60-204).

In *Fisher*, the Kansas Supreme Court concluded that service upon an individual at his place of business without first attempting to serve him at his dwelling place does not constitute substantial compliance under Kansas law. *Id.* at 220. The same factual scenario exists here. Plaintiffs served Robinson at his business address and never attempted to serve him at his dwelling house or usual place of abode. Plaintiffs thus failed to comply substantially with the requirements of Kan. Stat. Ann. § 60-304(a), and never served Robinson properly in this action. *See id.*; *see also Settle v. Diversified Consultants Inc.*, No. 13-2606-EFM-GL, 2014 WL 1607589, at *3–4 (D. Kan. Apr. 22, 2014) (holding that plaintiff failed to comply substantially with Kan. Stat. Ann. § 60-304(a) because, among other things, he served defendant by certified mail at his business address without first attempting service at his dwelling house); *Wanjiku v. Johnson Cty., Kan.*, No. 14-2001-RDR, 2014 WL 821285, at *2 (D. Kan. Mar. 3, 2014) (dismissing defendant without prejudice for insufficient service of process because plaintiff sent the summons and complaint to defendant's business address and did not attempt first to serve process at defendant's dwelling). The court thus dismisses plaintiffs' claims against defendant Robinson under Fed. R. Civ. P. 12(b)(5) without prejudice for insufficiency of service of process.

The court also concludes that plaintiffs failed to show substantial compliance with Kan. Stat. Ann. § 60-304(d)(1) when attempting service of Riley County. The Kansas statute requires a party to serve a county "by serving one of the county commissioners, the county clerk or the county treasurer." Kan. Stat. Ann. § 60-304(d)(1). Plaintiffs served none of these individuals.

"When the statute designates a particular recipient for process, courts must enforce that statutory procedure." *Rivera v. Riley Cty. Law Bd.*, No. 11-2067-JAR-JPO, 2011 WL 4686554, at *3 (D. Kan. Oct. 4, 2011) (internal citations and quotations omitted).  Our court has concluded that "[a]llowing plaintiff to serve someone other than those individuals listed in [§] 60-304(d) would violate the clear language of the statute and would not substantially comply with the statutory requirements." *Id.* (holding plaintiff failed to comply substantially with Kan. Stat. Ann. § 60-304(d) when he had not served any of the individuals designed to accept service for a government agency under the statute); *see also Rader v. U.S.D. 259 Wichita Pub. Schs*, No. 10-4118-KHV, 2011 WL 2144834, at *1 (D. Kan. May 31, 2011) (finding attempted service did not substantially comply with § 60-304(d) where the mail was not addressed to the person within the local governmental agency authorized to accept service by statute).  Thus, the court also dismisses plaintiffs' claims against defendant Riley County under Fed. R. Civ. P. 12(b)(5) without prejudice for insufficiency of service of process.

## II.    Plaintiffs' Motion for Leave to Amend (Doc. 58)

Plaintiffs seek leave under Fed. R. Civ. P. 15 to file a Second Amended Complaint.  Doc. 58.  Several defendants (the "opposing  defendants") have filed responses in opposition to plaintiffs' motion for leave to file a Second Amended Complaint.[5]  Specifically, they argue that the court should deny plaintiffs' motion because the proposed amendments are futile.  Plaintiffs have attached a proposed Second Amended Complaint (Doc. 58-1) to their motion, which seeks to assert new claims and add more defendants to the action.  The opposing defendants assert that the proposed Second Amended Complaint, like the First Amended Complaint, is subject to

---

[5]    The following defendants oppose plaintiffs' Motion for Leave to File a Seconded Amended Complaint:  Lora Ingles (Doc. 62); John Bosch (Doc. 63); Rhonda Eisenbarger, Deja Jackson, and KVC (Doc. 64); Kathy Boyd and St. Francis Community Services (Doc. 65); Miranda Johnson (Doc. 66); and Andrew Vinduska (Doc. 67).

dismissal because:  (1) the court lacks subject matter jurisdiction over plaintiffs' claims that fall within the domestic relations exception; (2) the court should abstain from exercising jurisdiction under the *Younger* abstention doctrine; and (3) plaintiffs have not alleged that certain defendants have acted under color of state law and so they have not stated a claim against them under § 1983.[6]  Even under the most liberal construction of plaintiffs' proposed Second Amended Complaint,[7] the court agrees with the opposing defendants.  The proposed amendments are futile. The court explains this conclusion, below.

### A.   Legal Standard

Rule 15(a) provides that courts should "freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The decision whether to grant leave to amend is within a court's sound discretion.  *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971)).

"Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment."  *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993) (citations omitted).  "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal for any reason . . . ."  *Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1239–40 (10th Cir. 2001) (citations omitted).

---

[6]      The court addresses the three arguments listed above for the opposing defendants collectively because each of their motions asserts them.  Some of the opposing defendants also have asserted other arguments that are more specific to each defendant.  Because the court need not address those arguments to decide plaintiffs' Motion for Leave to Amend, it excludes them from the analysis in this Order.  If applicable, defendants may reassert those arguments (if relevant) in response to any amended pleading that plaintiffs may file.

[7]      The court construes the *pro se* plaintiffs' pleadings liberally and holds them to a less stringent standard than formal pleadings drafted by lawyers.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  But, at the same time, the court does not assume the role of an advocate for *pro se* litigants.  *Id.*

Here, the opposing defendants assert that plaintiffs' proposed Second Amended Complaint is subject to dismissal under: (1) Fed. R. Civ. P. 12(b)(1) because no subject matter jurisdiction exists; and (2) Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief may be granted.

### 1.   Motion to Dismiss for Lack of Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction and, as such, must have a statutory basis to exercise jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) (citation omitted). Federal district courts have original jurisdiction of all civil actions arising under the constitution, laws, or treaties of the United States or where there is diversity of citizenship. 28 U.S.C. § 1331; 28 U.S.C. § 1332. "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (citation omitted). Since federal courts are courts of limited jurisdiction, there is a presumption against jurisdiction, and the party invoking federal jurisdiction bears the burden to prove it exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

### 2.   Motion to Dismiss for Failure to State a Claim

Fed. R. Civ. P. 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although this Rule "does not require 'detailed factual allegations,'" it demands more than "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, as the Supreme Court explained, "'will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Under this standard, 'the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.'" *Carter v. United States*, 667 F. Supp. 2d 1259, 1262 (D. Kan. 2009) (quoting *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)).

Although the Court must assume that the factual allegations in a complaint are true, it is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* at 1263 (quoting *Iqbal*, 556 U.S. at 678). "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice'" to state a claim for relief. *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

B.    **Analysis**

1.    **The Domestic Relations Exception Bars Plaintiffs' Claims for Injunctive Relief Pertaining to Child Custody Issues.**

The opposing defendants assert that the court lacks subject matter jurisdiction to decide issues pertaining to custody of plaintiffs' children under the domestic relations exception. The Supreme Court has held that this "domestic relations exception . . . divests the federal courts of power to issue divorce, alimony, and child custody decrees." *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992). The Tenth Circuit has interpreted this rule as one prohibiting federal courts from "decid[ing] those issues regularly decided in state court domestic relations actions such as divorce, alimony, child custody, or the support obligations of a spouse or parent" because those

11

issues are governed by the domestic relations exception.  *Vaughan v. Smithson*, 883 F.2d 63, 65 (10th Cir. 1989).

The domestic relations exception "is generally considered an exception to diversity jurisdiction," but courts also have applied the rule in federal question cases, like this one.  *See Watson v. Missouri*, No. 15-9930-JAR-JPO, 2016 WL 1359868, at *4 (D. Kan. Apr. 6, 2016) (citing *Johnson v. Rodrigues (Orozco)*, 226 F.3d 1103, 1111 & n.4 (10th Cir. 2000) (further citations omitted)).

Plaintiffs' proposed Second Amended Complaint seeks an injunction prohibiting defendants from depriving plaintiffs of custody of their children and prohibiting defendants from keeping their children in danger of abuse in the foster care system.  Doc. 58-1 at 44.  This request seeks, in effect, a ruling from our court declaring plaintiffs' right to custody of their children. Thus, the relief sought here "would essentially function as a child custody decree," which is precisely the type of relief that the domestic relations exception prohibits federal courts from entering.  *See Fisher v. Lynch*, No. 07-2154-KHV, 2007 WL 2225943, at *5 (D. Kan. July 31, 2007); *see also Watson*, 2016 WL 1359868, at *4 (holding that the court lacked jurisdiction to "modify or declare void a child support and health insurance decision concerning Plaintiff's minor children" because of the domestic relations exception).  The court thus lacks subject matter jurisdiction over plaintiffs' proposed Second Amended Complaint to the extent it seeks an order from the court enjoining Kansas' removal of the children and declaring plaintiffs' right to custody of them.

But the domestic relation exception does not bar a constitutional challenge to the state child custody statutory scheme on due process grounds.  *See Johnson*, 226 F.3d at 1111–12 (holding that plaintiff's challenge to the constitutionality of Utah adoption laws was not barred

by the domestic relations exception).  Plaintiffs' proposed Second Amended Complaint asserts

such a challenge here:  It alleges that defendants have violated plaintiffs' substantive due process

rights by removing their children from their custody.  Doc. 58-1 at ¶ 92.  Thus, plaintiffs'

constitutional challenges would survive a motion to dismiss under the domestic relations

exception.  Nevertheless, the proposed amended claims fail for other reasons, as described

below.

### 2.  The Court Must Abstain from Jurisdiction Under the *Younger* Abstention Doctrine.

The opposing defendants next assert that the court must abstain from this action under the

*Younger* abstention doctrine.  The *Younger* abstention doctrine applies when:

> (1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the
> state court provides an adequate forum to hear the claims raised in the federal
> complaint, and (3) the state proceedings involve important state interests, matters
> which traditionally look to state law for their resolution or implicate separately
> articulated state policies.

*Chapman v. Oklahoma*, 472 F.3d 747, 749 (10th Cir. 2006) (quoting *Crown Point I, LLC v.*

*Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1215 (10th Cir. 2003)).  If those three

conditions exist, "'*Younger* abstention is non-discretionary and, absent extraordinary

circumstances, a district court is required to abstain.'"  *Id.* (quoting *Crown Point I, LLC*, 319

F.3d at 1215).

All three *Younger* conditions exist here.  First, the opposing defendants assert that

plaintiffs are involved in a state "child in need of care" proceeding that is ongoing.  *See*, *e.g.*,

Doc. 36 at 5 (stating in defendant Lora Ingels' Suggestions in Support of her Motion to Dismiss

that plaintiffs' child custody proceedings currently are pending in the District Court of Riley

County, Kansas).  Plaintiffs do not refute defendants' characterization of the state court

proceedings as ongoing ones.  Indeed, plaintiffs' pleadings themselves support the ongoing

nature of that state court litigation.  *See*, *e.g.*, Doc. 9 at ¶ 48 (describing, in the First Amended

Complaint, the "ongoing deprivation of [plaintiffs'] parental rights and custody of [their

children], deprivation of liberty and continuing violation of their fundamental rights"); *see also*

*generally* Doc. 58 (describing the "factual and procedural" developments that have occurred in

the state court proceeding since plaintiffs filed their First Amended Complaint).  Second,

plaintiffs have not shown that the state court forum is inadequate to hear the constitutional

challenges that they assert in the First Amended Complaint.  *See Fisher v. Lynch*, 531 F. Supp.

2d 1253, 1266 (D. Kan. 2008) (holding that plaintiff made no argument why the Kansas state

courts could not entertain his constitutional claims arising from a child custody proceeding).

And, third, the state "child in need of care" proceeding involves matters that state courts

traditionally resolve.  *See Chapman*, 472 F.3d at 750 (holding that a district court must abstain

under *Younger* from deciding a constitutional challenge to Oklahoma's family court system

because "the Supreme Court has long held that '[t]he whole subject of the domestic relations of

husband and wife, parent and child, belongs to the laws of the States and not to the laws of the

United States.'" (quoting *Ankenbrandt*, 504 U.S. at 703)).  Thus, all three *Younger* conditions

exist here.

     Even so, the court may decline to apply the *Younger* abstention doctrine in extraordinary

cases such as "proven harassment or prosecutions undertaken by state officials in bad faith

without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances

where irreparable injury can be shown . . . ."  *Phelps v. Hamilton*, 122 F.3d 885, 889 (10th Cir.

1997) (quoting *Perez v. Ledesma*, 401 U.S 82, 85 (1971)).  But plaintiffs here allege no facts that

could bear the "heavy burden" required "to overcome the bar of *Younger* abstention . . . ."  *Id.*

(citation and internal quotation marks omitted).  The court thus concludes that *Younger*

abstention precludes the court from deciding the child custody constitutional challenges asserted in plaintiffs' proposed Second Amended Complaint.[8]

### 3. Plaintiffs' Proposed Second Amended Complaint Fails to State a Claim Against Certain Defendants Under § 1983.

Even if plaintiffs' claims fall outside the domestic relations exception or the conditions required for *Younger* abstention, plaintiffs' proposed Second Amended Complaint still fails to state a claim against certain defendants under § 1983.  To state a claim under § 1983, a plaintiff must allege that:  (1) "some person has deprived him [or her] of a federal right;" and (2) "the person who has deprived him [or her] of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (citations omitted).  General, conclusory allegations cannot state a claim for relief against a defendant under section 1983.  *See Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (holding that plaintiff failed to state a § 1983 claim by making "collective allegations against the state," and instead, plaintiff bears the burden to "provide fair notice of the grounds for the claims made against each of the defendants" by "isolat[ing] the allegedly unconstitutional acts [against] each defendant" in the complaint so that the defendants know "what particular unconstitutional acts they are alleged to have committed" (citations omitted)).

Plaintiffs' proposed Second Amended Complaint fails to allege sufficient facts showing that certain defendants acted under color of state law, as a plaintiff must to state a viable claim

---

[8]    Several defendants argue that the *Rooker-Feldman* doctrine bars the court from exercising jurisdiction in this case.  But the *Rooker-Feldman* doctrine has a "narrow scope" and applies only "if suit 'was filed before the end of the state courts' appeal process.'"  *Chapman*, 472 F.3d at 749 (quoting *Guttman v. Khalsa*, 446 F.3d 1027, 1031–32  (10th Cir. 2006)).  Because plaintiffs' pleadings suggest that the state custody proceeding still is ongoing, the *Rooker-Feldman* doctrine does not apply.

under § 1983. Several defendants specifically assert that they are not state actors.[9] Plaintiffs'
proposed Second Amended Complaint contains no assertion that any of these defendants are
state actors, and it alleges no facts that would make such an allegation plausible.

To state a viable § 1983 claim, a plaintiff must allege sufficient facts demonstrating,
plausibly, that the private individual or entity's conduct allegedly causing a constitutional
deprivation is "fairly attributable to the state." *Scott v. Hern*, 216 F.3d 897, 906 (10th Cir. 2000)
(citations and internal quotation marks omitted). The Tenth Circuit has applied four different
tests to determine if a private entity is subject to liability under § 1983 as a state actor: the nexus
test, the symbiotic relationship test, the joint action test, and the public function test. *Gallagher
v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995).

The nexus test requires a "sufficiently close nexus between the government and the
challenged conduct" and, in most cases, renders a state liable for a private individual's conduct
"only when [the State] has exercised coercive power or has provided such significant
encouragement, either overt or covert, that the choice must in law be deemed to be that of the
State." *Id.* at 1448 (citations and internal quotation marks omitted). The symbiotic relationship
test asks whether the state "has so far insinuated itself into a position of interdependence with a
private party that it must be recognized as a joint participant in the challenged activity." *Id.* at

---

[9]     Defendant Lora Ingles asserts that she is the court-appointed *guardian ad litem* to plaintiffs'
minor children. Doc. 36 at 6. Defendant KVC asserts that it contracts with the Kansas Department for
Children and Families to sponsor resource families for placement of Kansas children in foster care. Doc.
45 at 2. Defendant KVC states that it arranged placement of plaintiffs' children with relatives and that it
has been providing case management and family support services to the children. *Id.* Defendant Rhonda
Eisenbarger was the KVC family support worker assigned to plaintiffs' case, and defendant Deja Jackson
was the KVC case manager. *Id.* Defendant Andrew Vinduska asserts that he is an attorney in private
practice who represented Mr. Schwab in the state court "child in need of care" proceeding. Doc. 48 at 2.
Defendant St. Francis Community Services asserts that it is a private non-profit, faith based organization
with defendant Kathy Boyd serving as its acting supervisor. Doc. 51 at 9. Defendant Blake Robinson
states that he was a court-appointed defense attorney for Mr. Schwab in the state court "child in need of
care" case. Doc. 53 at 1 n.1. Defendant Miranda Johnson asserts she is a private attorney who was
appointed by the court to represent Ms. Schwab in the state child custody case. Doc. 73 at 15.

1451 (citations and internal quotation marks omitted).  The joint action test requires courts to "examine whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights."  *Id.* at 1453 (citations omitted).  Finally, the public function test asks whether the challenged action is "a function traditionally exclusively reserved to the State."  *Id.* at 1456 (citations and internal quotation marks omitted).

Plaintiffs have alleged no facts in their proposed Second Amended Complaint to state a plausible claim against the opposing defendants for conduct that was "fairly attributable to the state" under any of these tests.  Plaintiffs' general assertion that defendants "collaborated, acted in concert, and conspired" with other state actors is insufficient to state a claim under § 1983.  Doc. 58-1 at ¶ 103.  Likewise, plaintiffs' allegations that defendants "acted under color of state law" are merely conclusory ones.  *See, e.g.*, Doc. 58-1 at ¶¶ 1, 27–28, 32, 91–92, 104.  Plaintiffs fail to support the conclusory "under color of state law" allegations with specific facts showing that the opposing defendants' conduct was "fairly attributable to the state" to assert a plausible claim against them under § 1983.  Without such allegations, plaintiffs fail to state a claim for relief against these defendants under § 1983.

### 4.  Conclusion

For all these reasons, the court agrees with the opposing defendants.  Plaintiffs' proposed amendments are futile because the proposed Second Amended Complaint still is subject to dismissal.  The court lacks subject matter jurisdiction over the claims asserted against them in the proposed Second Amended Complaint, or, in the alternative, plaintiffs have failed to state a claim for relief against certain defendants.  The court thus denies in part plaintiffs' request for leave to file their proposed Second Amended Complaint.  Nevertheless, the court does not wish to deny plaintiffs their day in court, if they have actionable claims against defendants.  Thus, the

17

court allows plaintiffs one, final opportunity to file an amended Complaint—one that addresses

the concerns raised by the court in this Order—within 30 days of the date of this Order.

Specifically, plaintiffs must plead *facts* demonstrating that neither the domestic relations

exception nor the *Younger* abstention doctrine apply to this case.  Plaintiffs also must plead

sufficient facts to state a plausible claim under § 1983 against each defendant that they name in

their lawsuit.  The court also cautions plaintiffs that it anticipates granting no further motions for

leave to file an amended Complaint in this case.

### III.    Defendants' Motions to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim (Docs. 35, 44, 47, 50, 52, 72)

Last, the court addresses the other motions to dismiss.  Several defendants have moved to

dismiss plaintiffs' First Amended Complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).[10]

Because the court grants plaintiffs leave to file a revised Second Amended Complaint, the court

denies the other motions to dismiss without prejudice because they are moot.

**IT IS THEREFORE ORDERED THAT** plaintiffs' Motion for Leave to File an

Amended Complaint (Doc. 58) is granted in part and denied in part.  The court denies plaintiffs

leave to file their proposed Second Amended Complaint (Doc. 58-1), but grants plaintiffs leave

to file a revised Second Amended Complaint—one that complies with the court's directives in

this Order—within 30 days of the date of this Order.

**IT IS FURTHERED ORDERED THAT** defendant Riley County, Kansas' Motion to

Quash Service and/or Dismiss (Doc. 41) is granted.  The court dismisses plaintiffs' claims

---

[10]    The following defendants have filed motions to dismiss:  Lora Ingles, Rhonda Eisenbarger, Deja Jackson, KVC Behavioral Healthcare, Inc. ("KVC"), Andrew Vinduska, Kathy Boyd, St. Francis Community Services, and Blake Robinson.  *See* Docs. 35, 44, 47, 50, 52.  Defendant Miranda Johnson has filed a Motion for Judgment on the Pleadings, or in the alternative, Motion to Dismiss.  *See* Doc. 72.

against defendant Riley County, Kansas WITHOUT PREJUDICE for insufficient service of process.

**IT IS FURTHERED ORDERED THAT** defendant Blake Robinson's Motion to Dismiss (Doc. 52) is granted.  The court dismisses plaintiffs' claims against defendant Blake Robinson WITHOUT PREJUDICE for insufficient service of process.

**IT IS FURTHERED ORDERED THAT** defendant Lora Ingles' Motion to Dismiss (Doc. 35), defendants Rhonda Eisenbarger, Deja Jackson, and KVC's Motion to Dismiss (Doc. 44), defendant Andrew Vinduska's Motion to Dismiss (Doc. 47), defendants Kathy Boyd and St. Francis Community Services' Motion to Dismiss (Doc. 50), and defendant Miranda Johnson's Motion for Judgment on the Pleadings, or in the Alternative, Motion to Dismiss (Doc. 72) are denied as moot.

**IT IS FURTHER ORDERED** that plaintiffs' Motion to Expedite Ruling on Motion to Amend (Doc. 75) is moot.

**IT IS SO ORDERED.**

Dated this 28th day of July, 2016, at Topeka, Kansas.

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**