# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **RAYMOND SCHWAB, et al.,** | |
| **Plaintiffs,** | |
| **v.** | **Case No. 16-CV-4033-DDC-KGS** |
| **STATE OF KANSAS, et al.,** | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

On March 31, 2016, pro se plaintiffs Raymond and Amelia Schwab filed this lawsuit
against the State of Kansas ("Kansas") and various state officials as well as private entities and
private individuals. Doc. 1. Plaintiffs filed an Amended Complaint[1] on April 25, 2016. Doc. 9.
Generally, plaintiffs' Amended Complaint asserted that Kansas removed five of their six
children from their custody, citing Mr. Schwab's use of medical marijuana as the basis for the
removal. Plaintiffs contended that defendants had infringed upon their constitutional rights by
removing their children from their home and initiating child in need of care ("CINC")
proceedings in Riley County, Kansas.

After several defendants moved to dismiss plaintiffs' Amended Complaint, plaintiffs
filed a Motion for Leave to Amend their Complaint, attaching a proposed Second Amended
Complaint to their motion. Docs. 58, 58-1. On July 28, 2016, the court granted in part and
denied in part plaintiffs' Motion for Leave to File an Amended Complaint. Doc. 79. The court
concluded that plaintiffs' proposed amendments were futile because the proposed Second
Amended Complaint still is subject to dismissal. *Id.* at 17. Nevertheless, the court granted

---

[1] Plaintiffs' First Amended Complaint added Tyler Scott Allison, plaintiffs' adult son, as one of the
plaintiffs to the lawsuit.

plaintiffs a final opportunity to file an amended Complaint. *Id.* at 18. But the court cautioned plaintiffs that any such amended pleading must correct the deficiencies identified in the court's order to remain viable. *Id.*

On August 26, 2016, plaintiffs filed a 77-page "Revised Second Amended Complaint" ("Complaint").[2] Doc. 85. Plaintiffs also filed a Motion for Preliminary Injunction and Temporary Restraining Order. Doc. 86. The court conducted a hearing on the Motion for Preliminary Injunction and Temporary Restraining Order on September 8, 2016. At the conclusion of that hearing, the court denied plaintiffs' motion. Among other concerns, the court determined that plaintiffs had not shown a likelihood of success on the merits because the record raised serious questions whether the court must abstain from plaintiffs' claims for injunctive relief under the *Younger* abstention doctrine.[3]

All defendants now have filed motions to dismiss plaintiffs' Complaint. After reviewing plaintiffs' Complaint and considering the parties' arguments and submissions—including the materials from the underlying CINC case—the court again concludes that the *Younger* doctrine requires the court to abstain from deciding plaintiffs' claims for equitable relief. The court thus dismisses those claims without prejudice. The court also concludes that, to the extent plaintiffs' claims challenge any final orders in the CINC proceeding, the *Rooker-Feldman* doctrine bars those claims. The court thus dismisses those claims without prejudice. And, to the extent the *Rooker-Feldman* doctrine does not bar any of plaintiffs' claims for money damages, the court dismisses their §§ 1983 and 1985 claims because they fail to state plausible claims for relief.

---

[2]     The court refers to the Revised Second Amended Complaint—the current operative pleading—as the Complaint throughout the rest of this Order.

[3]     The court articulated its reasons for denying plaintiffs' injunction motion on the record. The Tenth Circuit affirmed the court's decision denying plaintiffs' injunction motion on May 26, 2017. *Schwab v. Kansas*, No. 16-3284, 2017 WL 2304456 (10th Cir. May 26, 2017).

Finally, the court declines to exercise supplemental jurisdiction over plaintiffs' state law claims. The court explains the reasons for its conclusions in the analysis that follows.

## I. Plaintiffs' Motion to Dismiss Parties Randi Debenham, Miranda Johnson, Blake Robinson, and Andrew Vinduska

Before turning to the pending motions to dismiss, the court addresses plaintiffs' Motion to Dismiss Parties Randi Debenham, Miranda Johnson, Blake Robinson, and Andrew Vinduska. Doc. 194. Mr. Debenham, Mr. Robinson, and Mr. Vinduska are attorneys who the court appointed to represent plaintiff Raymond Schwab in the CINC case. Ms. Johnson also is an attorney who the court appointed to represent plaintiff Amelia Schwab in the CINC case. All four defendants filed motions to dismiss plaintiffs' claims against them before plaintiffs filed their Motion to Dismiss them as parties. *See* Docs. 118 (Ms. Johnson), 173 (Mr. Vinduska), 183 (Mr. Debenham & Mr. Robinson).

Plaintiffs' motion does not explain whether it seeks a dismissal with prejudice or without prejudice. Plaintiffs' motion recites that plaintiffs "believe that the curr[e]nt relief being requested [from] the court cannot be granted toward these defendant[ ]s, and the plaintiff[ ]s are reserving their right to initiate malpractice litigation at the removal of these Defendant[ ]s from this current action." Doc. 194 at 1.

Mr. Debenham and Mr. Robinson have construed plaintiffs' motion as one seeking a dismissal without prejudice under Fed. R. Civ. P. 41(a)(2). Doc. 197 at 1. Mr. Debenham and Mr. Robinson assert that the court lacks subject matter jurisdiction over plaintiffs' claims against them, and thus they contend that they have no reason to object to plaintiffs' motion for voluntary dismissal without prejudice. Mr. Debenham and Mr. Robinson also assert that their Motion to Dismiss (Doc. 183) is moot now that plaintiffs seek to dismiss all their claims against the two defendants. Because Mr. Debenham and Mr. Robinson do not object to a dismissal without

prejudice, the court grants plaintiffs' motion to dismiss these defendants without prejudice. It also denies Mr. Debenham and Mr. Robinson's Motion to Dismiss (Doc. 183) as moot.

Ms. Johnson and Mr. Vinduska oppose plaintiffs' motion to the extent it seeks a dismissal without prejudice. Docs. 198, 201. Ms. Johnson and Mr. Vinduska assert that plaintiffs' claims against them fail to state viable claims for relief. Thus, the court should dismiss the claims against them with prejudice. The court construes plaintiffs' motion liberally as one seeking dismissal without prejudice. And, the court denies plaintiffs' motion because, as explained below, plaintiffs' Complaint fails to state viable claims for money damages under federal law against Ms. Johnson and Mr. Vinduska. These two defendants thus are entitled to dismissal with prejudice of plaintiffs' federal claims. The court considers their motions to dismiss below.

In sum, then, the court thus grants in part and denies in part plaintiffs' Motion to Dismiss Parties Randi Debenham, Miranda Johnson, Blake Robinson, and Andrew Vinduska. Doc. 194. The court grants plaintiffs' motion to dismiss Mr. Debenham and Mr. Robinson from the case without prejudice. The court denies the motion to the extent that it seeks dismissal of all claims against Ms. Johnson and Ms. Vinduska without prejudice.

## II.     Defendants' Motions to Dismiss

The court now considers the remaining 12 motions to dismiss.[4]

---

[4]     See Docs. 105 (filed by defendants KVC, Rhonda Eisenbarger, and Deja Jackson), 113 (filed by defendants St. Francis Community Services and Kathy Boyd), 115 (filed by defendant Lora Ingles), 118 (filed by defendant Miranda Johnson), 149 (filed by defendants Kansas Department for Children and Families, Phyllis Gilmore, Theresa Freed Barnes, and Kendra Baker), 151 (filed by defendants State of Kansas, Governor Sam Brownback, Barry Wilkerson, Bethany Fields, Riley County Police Department, Carla Swartz, and Pathways Family Services, LLC), 153 (filed by defendant John Bosch), 163 (filed by defendant Laura Price), 169 (filed by defendant Pawnee Mental Health Services, Inc.), 173 (filed by defendant Andrew Vinduska), 181 (filed by defendant Riley County, Kansas), 189 (filed by defendant Sunflower CASA Project, Inc.).

## A.  Factual Background

Most of the following facts are taken from plaintiffs' Complaint, are accepted as true, and viewed in the light most favorable to plaintiffs because they are the non-moving parties.  *See Garling v. EPA*, 849 F.3d 1289, 1292 (10th Cir. 2017) (explaining that, on a Fed. R. Civ. P. 12(b)(1) or 12(b)(6) motion to dismiss, the court must "accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the [plaintiff]" (citations and internal quotation marks omitted)).  The court also construes plaintiffs' allegations liberally because they proceed pro se.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (holding that courts must construe pro se litigant's pleadings liberally and hold them to a less stringent standard than formal pleadings drafted by lawyers).

The few facts not derived from plaintiffs' Complaint are taken from state court records in the CINC proceeding pending in Riley County, Kansas state court.  *See* Doc. 158.  The court can consider these facts on a motion to dismiss because plaintiffs refer to documents and proceedings from the CINC case in their Complaint,[5] the facts are central to plaintiffs' claims, and the parties never dispute the documents' authenticity.  *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (quoting *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007)).

Mr. and Mrs. Schwab are the natural parents of four children.  Mrs. Schwab is the mother of a fifth child, and Mr. Schwab is his stepfather.  In April 2015, Mr. and Mrs. Schwab allowed their five children to stay with their maternal grandmother in Dickinson County, Kansas.  Unbeknownst to the Schwabs, the maternal grandmother and a maternal uncle contacted the Riley County Police Department ("RCPD") to express their concerns about how Mr. and Mrs. Schwab were caring for their children.  The RCPD removed the children from the Schwab's

---

[5]        *See, e.g.*, Doc. 85 ¶¶ 31–32, 79–82, 85–87, 93–94, 100–04, 106, 108, 110–12, 113, 115.

custody, and the State of Kansas initiated proceedings in the District Court of Riley County, Kansas ("District Court") to determine if the Schwab children were CINC under Kansas law. *See* Kan. Stat. Ann. § 38-2202(d) (providing the statutory definition for a "child in need of care").

On April 29, 2015, the Riley County District Court held a temporary custody hearing for the five children. At its conclusion, the District Court placed the five children in the temporary custody of the Kansas Department of Children and Families ("DCF"). The District Court appointed defendant Lora Ingels as a guardian ad litem to represent the five children. The District Court also appointed separate counsel to represent Mr. and Mrs. Schwab respectively in the CINC case. Through counsel, Mr. and Mrs. Schwab filed separate motions seeking a rehearing of the temporary custody ruling.

On May 13, 2015, the District Court held a rehearing. Both Mr. and Mrs. Schwab attended the hearing, represented by their separate counsel. Before the hearing started, the District Court ordered Mr. and Mrs. Schwab to submit to urinalysis and breathalyzer tests. Both complied with that order. Mr. Schwab tested positive for methamphetamine, amphetamine, hydrocodone, and tramadol. Mrs. Schwab tested negative for any illegal substances. During the hearing, both Mr. and Mrs. Schwab withdrew their respective motions seeking rehearing of the temporary custody ruling. At the end of the hearing, the District Court ordered that the five children remain in temporary DCF custody.

On June 4, 2015, Mr. Schwab filed a pro se motion to suppress the results of the May 13, 2015 urinalysis test. His motion asserted that the test was an unlawful search and seizure that violated his rights under the Fourth Amendment to the United States Constitution. His motion also claimed that the test results were unreliable.

After holding a hearing on a June 11, 2015, the District Court denied Mr. Schwab's pro se motion. The District Court also ordered Mr. Schwab to submit to another urinalysis and breathalyzer test. He refused. The District Court considered Mr. Schwab's refusal to take the tests as a positive result.

On July 10, 2015, the District Court held an adjudication hearing. Mr. Schwab attended that hearing, represented by counsel. Mrs. Schwab did not appear in person, but she was represented by counsel at the hearing. The parties presented testimony and evidence during the adjudication hearing, and at its conclusion, the District Court adjudicated the children as CINC.

The District Court held a disposition hearing on August 5, 2015. The District Court ordered that the Schwab children remain in DCF custody with out-of-home placement. The case plan goal was reintegration into the parental home.

The District Court held review hearings on October 29, 2015 and January 5, 2016. After both hearings, the District Court affirmed that reintegration still was the case plan goal, held that the court's earlier orders still were in effect, and ordered Mr. and Mrs. Schwab to follow the case plan. The District Court held a permanency hearing on April 6, 2016. The District Court found that appropriate public and private agencies had made reasonable efforts to assist and support the family to accomplish the goal of reintegration but that the progress of Mr. and Mrs. Schwab to achieve the permanency plan was not adequate. Nevertheless, the District Court found that reintegration still was a viable goal, and it ordered another permanency hearing on October 19, 2016.

Mr. Schwab appealed the District Court's CINC adjudication to the Kansas Court of Appeals. Mrs. Schwab did not appeal this ruling. On April 8, 2016, the Kansas Court of

Appeals issued four orders affirming the CINC adjudication.[6]  *See In re C.S.*, No. 114,272, 2016 WL 1391810 (Kan. Ct. App. Apr. 8, 2016); *In re A.S.*, No. 114,273, 2016 WL 1391817 (Kan. Ct. App. Apr. 8, 2016); *In re A.S.*, No. 114,274, 2016 WL 1391818 (Kan. Ct. App. Apr. 8, 2016); *In re E.S.*. No. 114,275, 2016 WL 1391819 (Kan. Ct. App. Apr. 8, 2016).  The court also rejected Mr. Schwab's arguments that the District Court had violated his constitutional rights to due process and against unreasonable searches and seizures under the Fourth Amendment during the CINC proceedings.  *See*, *e.g.*, *In re C.S.*, 2016 WL 1391810, at *8, 11.

Mr. Schwab filed Petitions for Review with the Kansas Supreme Court seeking review of the court of appeals' decisions affirming the CINC adjudications.  The Kansas Supreme Court denied review on October 21, 2016.

Plaintiffs brought this lawsuit against 26 individuals and entities and 10 John Does who are or have been involved in the CINC case.  The Complaint asserts claims under 42 U.S.C. §§ 1983 and 1985 for alleged constitutional violations and conspiracy to commit constitutional violations, as well as state law tort claims.

Plaintiffs seek both monetary and injunctive relief.  Plaintiffs also seek damages in an amount not less than $15 million.  The requested injunctive relief includes:  (1) a prohibition against random drug screenings without warrant or cause; (2) a requirement that defendants abide by all policies and procedures contained in the Kansas Title IV-B Child and Services Plan, and the DCF Policy Handbook; (3) an order that defendants release certain documents relevant to the CINC proceedings; (4) a requirement that defendants cease and desist all harassment,

---

[6]  Plaintiffs' Complaint references the Kansas Court of Appeals' decisions. Doc. 85 at ¶ 122.  And, at the September 8, 2016 injunction hearing, Mr. Schwab did not dispute the authenticity of these four opinions—that is, he agreed that these cases are the appellate decisions affirming the CINC adjudication (although he disagrees with their conclusions).  The court can take judicial notice of the Kansas Court of Appeals opinions.  *See Continental Coal, Inc. v. Cunningham*, 511 F. Supp. 2d 1065, 1071 (D. Kan. 2007) (holding that court orders in a Kansas state court case are subject to judicial notice).

slander, false allegations, and retaliation against plaintiffs; (5) removal of all defendants from their involvement in the CINC case and a transfer of the CINC case from Riley County to Dickinson County; and (6) a prohibition against harassment of Tyler Scott Allison by denying access to his siblings and subjecting him to arbitrary drug testing without warrant or cause. Doc. 85 at 66–68.

## B. Legal Standards

Some defendants move to dismiss plaintiffs' Complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). Other defendants move to dismiss under Fed. R. Civ. P. 12(b)(6) for failing to state a claim. The court recites each governing legal standard below.

### 1. Rule 12(b)(1) Standard

"Federal courts are courts of limited jurisdiction and, as such, must have a statutory basis to exercise jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) (citation omitted). Federal district courts have original jurisdiction of all civil actions arising under the constitution, laws, or treaties of the United States or where there is diversity of citizenship. 28 U.S.C. § 1331; 28 U.S.C. § 1332. "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (citation omitted). Since federal courts are courts of limited jurisdiction, there is a presumption against jurisdiction, and the party invoking jurisdiction bears the burden to prove it exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

Generally, a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) takes one of two forms: a facial attack or a factual attack. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). "First, a facial attack on the complaint's allegations as to

subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true." *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)) (internal citations omitted).

"Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends." *Id.* at 1003 (citations omitted). "When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations." *Id.* (citations omitted). "A court has wide discretion to allow affidavits, other documents, and [to conduct] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.* (citations omitted); *Los Alamos Study Grp. v. U.S. Dep't of Energy*, 692 F.3d 1057, 1063–64 (10th Cir. 2012); *see also Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1324–25 (10th Cir. 2002) (holding that a court must convert a motion to dismiss to a motion for summary judgment under Fed. R. Civ. P. 56 only when the jurisdictional question is intertwined with the case's merits).

## 2. Rule 12(b)(6) Standard

To survive a Rule 12(b)(6) motion to dismiss,[7] " a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

---

[7]     All defendants except Miranda Johnson move to dismiss plaintiffs' Complaint under Fed. R. Civ. P. 12(b)(6). Ms. Johnson has filed a Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c), or in the alternative Motion to Dismiss. Doc. 118. Courts evaluate a Rule 12(c) motion under the same standard that governs Rule 12(b)(6) motions—the one recited above. *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 n.2 (10th Cir. 2002) (citing *Atl. Richfield Co. v. Farm Credit Bank*, 226 F.3d 1138, 1160 (10th Cir. 2000)).

*Id.* (citing *Twombly*, 550 U.S. at 556). "Under this standard, 'the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.'" *Carter v. United States*, 667 F. Supp. 2d 1259, 1262 (D. Kan. 2009) (quoting *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)).

Although the court must assume that the complaint's factual allegations are true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1263 (quoting *Iqbal*, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim for relief. *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

When evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court may consider "not only the complaint itself, but also attached exhibits and documents incorporated into the complaint by reference." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). A court also "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Id.* (quoting *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007)).

### C.  Analysis

Defendants assert many of the same arguments to support dismissal of plaintiffs' Complaint. The court addresses each of the arguments, separately, in the following sections. The court concludes that dismissal of plaintiffs' Complaint is warranted for several reasons, as explained in more detail below.[8]

---

[8] Plaintiffs never responded to the motions to dismiss filed by defendants Andrew Vinduska (Doc. 173), Riley County, Kansas (Doc. 181), and Sunflower CASA Project, Inc. (Doc. 189). Plaintiffs' failure to oppose these defendants' motions to dismiss provides another reason for the court to grant the motions. *See* D. Kan. Rule 7.4(d) ("If a responsive brief or memorandum is not filed within the D. Kan. Rule 6.1(d) time requirements, the court will consider and decide the motion as an uncontested motion. Ordinarily, the court will grant the motion without further notice.").

## 1. Eleventh Amendment Immunity

Several defendants assert that the court lacks subject matter jurisdiction over claims plaintiffs assert because they are immune from suit under the Eleventh Amendment. The Eleventh Amendment "accord[s] states the respect owed them as joint sovereigns," by granting immunity to nonconsenting states to suits in federal court. *Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1252 (10th Cir. 2007) (citations omitted). Eleventh Amendment immunity "applies . . . whether a plaintiff seeks declaratory or injunctive relief, or money damages." *Id.* (citations omitted). Also, the Amendment's immunity extends to state entities that are considered "arm[s] of the state." *Id.* at 1253 (citing *Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274, 280 (1977)).

Eleventh Amendment immunity bars suits against a state "unless the state waives immunity or Congress has validly abrogated immunity." *Nelson v. Geringer*, 295 F.3d 1082, 1096 (10th Cir. 2002) (citing *Seminole Tribe v. Florida*, 517 U.S. 44, 54–55 (1996)). Neither exception applies here. Kansas has not waived immunity, and the Supreme Court has held that Congress did not abrogate state sovereign immunity when it enacted 42 U.S.C. §§ 1983 and 1985. *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1195–96 (10th Cir. 1998) (citing *Quern v. Jordan*, 440 U.S. 332, 338–40 (1979)). Thus, Eleventh Amendment immunity bars plaintiffs' §§ 1983 and 1985 claims against Kansas[9] and DCF. *See id.* (holding that Eleventh Amendment immunity barred plaintiffs' §§ 1981, 1983, and 1985 claims "against Kansas and its state agencies in the federal courts"); *see also McCollum v. Kansas*, No. 14-1049-EFM-KMH, 2014

---

[9]     Plaintiffs initially named Kansas as a defendant in this lawsuit. Their Complaint now removes Kansas as a defendant. Nevertheless, Kansas argues that plaintiffs' claims against Governor Sam Brownback in his official capacity constitute a suit against the State itself. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). The court thus considers above whether the Eleventh Amendment bars plaintiffs' claims against Kansas.

WL 3341139, at *6 (D. Kan. July 8, 2014), *aff'd*, 599 F. App'x 841 (10th Cir. 2015) (explaining that "DCF is the agency through which the state acts in all matters that relate to children who are found to be in need of care" and thus is "an arm of the state" immune from suit under the Eleventh Amendment).

The Eleventh Amendment also bars plaintiffs' claims for money damages against state officials in their official capacities. *Ellis*, 163 F.3d at 1196. So, the Eleventh Amendment bars plaintiffs' official capacity claims seeking money damages against defendants Sam Brownback (the Kansas Governor), Barry Wilkerson (County Attorney for Riley County),[10] Bethany Fields (Deputy County Attorney for Riley County), Phyllis Gilmore (Secretary of DCF), Theresa Freed Barnes (Communications Director for DCF), Kendra Baker (Director of Client Services for DCF), and Judge John Bosch (the state court district judge presiding over the CINC case in state court).

## 2. *Younger* Abstention

All defendants assert that plaintiffs' claims are barred by the *Younger* abstention doctrine. "*Younger* abstention dictates that federal courts not interfere with state court proceedings by granting equitable relief—such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings—when such relief could adequately be sought before the state court." *Rienhardt v. Kelly*, 164 F.3d 1296, 1302 (10th Cir. 1999). *Younger* abstention applies when:

> (1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies.

---

[10]     In CINC proceedings, the county attorney and assistant county attorneys appear on behalf of the State and carry out the policies of the State in protecting the child's best interests. *See* Kan. Stat. Ann. §§ 19-702, 38-2201(b)(2).

*Chapman v. Oklahoma*, 472 F.3d 747, 749 (10th Cir. 2006) (quoting *Crown Point I, LLC v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1215 (10th Cir. 2003)). If those three conditions exist, "*Younger* abstention is non-discretionary and, absent extraordinary circumstances, a district court is required to abstain." *Id.* (quoting *Crown Point I, LLC*, 319 F.3d at 1215).

All three *Younger* conditions exist here. *First*, according to the record before the court, the CINC case remains pending. The court recognizes that additional proceedings likely have transpired in the District Court since defendants filed the state court record on October 11, 2016. Doc. 158. Plaintiffs also make assertions in their various responses that suggest that additional proceedings have occurred in the CINC case. But, nothing in the current record shows that the District Court has held a permanency hearing. And, the current record establishes that the Schwab children remain in state custody. To the extent the Schwab children remain in state custody today, the CINC case is an ongoing proceeding. *See J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1290 (10th Cir. 1999) (holding that "as long as the child remains in state custody, [the proceedings] are ongoing" because the state court has jurisdiction to modify the child's disposition); *Alferez ex rel. Calderon v. Chronister*, 41 F. Supp. 2d 1238, 1240 (D. Kan. 1999) (holding that *Younger* abstention applied to claims involving a child in need of care petition pending in state court).

*Second*, the state court provides an adequate forum to hear the claims plaintiffs raise in this lawsuit. When considering the second *Younger* requirement, the "pertinent issue is whether [the federal] claims *could have been raised* in the pending state proceedings." *Valdez*, 186 F.3d at 1292 (quoting *Moore v. Sims*, 442 U.S. 415, 425 (1979)). "Certainly, abstention is appropriate unless state law clearly bars the interposition of the [federal statutory] and constitutional claims."

14

*Id.* (quoting *Moore*, 442 U.S. at 425–26). Plaintiffs bear the burden to prove that state law bars presentation of their claims in the state court proceeding. *Id.* (first citing *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14–15 (1987); then citing *Moore*, 442 U.S. at 432). Plaintiffs have not shouldered that burden here.

Plaintiffs allege defendants violated their constitutional rights by removing the Schwab children from their custody, presenting false allegations and evidence in court, forcing plaintiffs to submit to drug testing, and preventing Tyler Allison from seeing his siblings. Plaintiffs have failed to demonstrate that the state court proceedings are an inadequate forum to raise these claims. District courts in Kansas are courts of general jurisdiction. *See* Kan. Stat. Ann. § 20-301. And state courts of general jurisdiction "can adjudicate cases invoking federal statutes, such as § 1983," the very claims that plaintiffs assert in this federal case. *Nevada v. Hicks*, 533 U.S. 353, 366 (2001). Also, the record demonstrates that Mr. Schwab has asserted violations of his due process and Fourth Amendment rights in the state court proceedings. Plaintiffs thus have failed to show that the Kansas state courts are an inadequate forum for asserting their constitutional claims.

*Third*, the state "child in need of care" proceeding involves matters that state courts traditionally resolve. *See Chapman*, 472 F.3d at 750 (holding that a district court must abstain under *Younger* from deciding a constitutional challenge to Oklahoma's family court system because "the Supreme Court has long held that '[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States.'" (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992)); *see also Chronister*, 41 F. Supp. 2d at 1240 (concluding that the state's interest in family relations and

child welfare warranted the district court's abstention from a case arising out of a pending child in need of care petition filed in state court). Thus, all three *Younger* conditions exist here.

Even so, the court may decline to apply the *Younger* abstention doctrine in extraordinary cases such as "proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown . . . ." *Phelps v. Hamilton*, 122 F.3d 885, 889 (10th Cir. 1997) (quoting *Perez v. Ledesma*, 401 U.S. 82, 85 (1971)). But plaintiffs here allege no facts that could bear the "heavy burden" required "to overcome the bar of *Younger* abstention . . . ." *Id.* (citation and internal quotation marks omitted); *see also Schwab v. Kansas*, No. 16-3284, 2017 WL 2304456, at *3 (10th Cir. May 26, 2017) (affirming district court's decision to apply *Younger* and deny plaintiffs' Motion for Preliminary Injunction because plaintiffs provided no evidence of bad faith or harassment to meet their burden to show that an exception to *Younger* applied).

The court thus concludes that *Younger* bars plaintiffs' claims challenging the ongoing state court CINC proceedings. But, *Younger* only applies to plaintiffs' equitable claims. *See Rienhardt*, 164 F.3d at 1302 (holding that the *Younger* doctrine did not apply when plaintiff did not seek any equitable relief); *see also Morkel v. Davis*, 513 F. App'x 724, 729 (10th Cir. 2013) (explaining that plaintiff's claims for monetary damages did "not fall within the purview of *Younger* abstention"). So, the court abstains from exercising jurisdiction over plaintiffs' claims for equitable relief under *Younger*, and it dismisses these claims without prejudice. *See Morkel*, 513 F. App'x at 730 (affirming the district court's dismissal of equitable claims under *Younger* but remanding with instructions to modify the dismissal without prejudice); *see also Smith v. Lake*, No. CIV-16-055-RAW, 2016 WL 4690396, at *3 (E.D. Okla. Sept. 7, 2016) (dismissing

plaintiff's § 1983 claims seeking equitable relief without prejudice under *Younger* and dismissing plaintiff's § 1983 claims for monetary relief on the merits).

### 3. *Rooker-Feldman* Doctrine

To the extent plaintiffs' claims challenge any final orders in the CINC proceeding, those claims are barred not by *Younger*, but by the *Rooker-Feldman* doctrine. For instance, the District Court's July 10, 2015 decision adjudicating the children as CINC is a final order. Mrs. Schwab never appealed the CINC adjudication. But, Mr. Schwab did appeal. The Kansas Court of Appeals denied his appeal, and the Kansas Supreme Court denied review of the court of appeals' decision. So, the District Court's CINC adjudication is a final order against Mr. and Mrs. Schwab. Plaintiffs' claims challenging this adjudication (and any other final orders from the state CINC proceedings) are barred by the *Rooker-Feldman* doctrine.

"The *Rooker-Feldman* doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.'" *Lance v. Dennis*, 546 U.S. 459, 460 (2006) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). The doctrine applies "where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court." *Id.* at 466. To allow otherwise would contravene 28 U.S.C. § 1257, which confers jurisdiction only on the Supreme Court to hear appeals from final state-court judgments. *Id.* at 463. The *Rooker-Feldman* doctrine thus precludes the lower federal courts "from exercising appellate jurisdiction over final state-court judgments." *Id.*

The *Rooker-Feldman* doctrine also bars district courts from exercising jurisdiction over claims that are "'inextricably intertwined' with the state court's judgment." *Mann v. Boatright*, 477 F.3d 1140, 1147 (10th Cir. 2007) (quoting *Exxon–Mobil Corp.*, 544 U.S. at 284). Here,

plaintiffs allege injuries from final state court rulings such as the temporary custody, adjudication, and disposition orders.[11]  Among other things, plaintiffs allege that the state district court based its decisions on falsified, fraudulent, and inadmissible evidence.  And, plaintiffs' Complaint appears to seek monetary damages as relief from those rulings.  These types of claims attack the validity of the state court judgments:  To order the relief plaintiffs seek "require[s] the [federal] district court to review and reject those judgments."  *Mann*, 477 F.3d at 1147.  Thus, the relief sought is "inextricably intertwined" with the state court judgment.  *Id.*  And, the *Rooker-Feldman* doctrine precludes the court from undertaking such review.  The court thus dismisses plaintiffs' claims challenging any final orders in the CINC proceeding without prejudice.  *See Atkinson-Bird v. Utah Div. of Child and Family Servs.*, 92 F. App'x 645, 648 (10th Cir. 2004) (holding that a federal court lacks jurisdiction when the *Rooker-Feldman* doctrine applies and "has no power but to dismiss the case without prejudice" (citing *T.W. ex rel. Enk v. Brophy*, 124 F.3d 893, 898–99 (7th Cir. 1997)).

### 4.  Plaintiffs' Complaint Fails to Allege Facts Supporting Plausible §§ 1983 and 1985 Violations.

To the extent the *Rooker-Feldman* doctrine does not bar plaintiffs' claims for money damages, the court dismisses plaintiffs' §§ 1983 and 1985 claims because they fail to state plausible claims for relief.  The following sections explain the reasons why dismissal of plaintiffs' §§ 1983 and 1985 claims is warranted under Fed. R. Civ. P. 12(b)(6).

### a.  Judicial, Prosecutorial, Witness, Guardian ad Litem, and Qualified Immunity

Several defendants are absolutely immune from suit.  *First*, Judge John Bosch enjoys judicial immunity.  Generally, judges are immune from suits for money damages and injunctive

---

[11]  Kan. Stat. Ann. § 38-2273(a) allows a party to appeal a state court's order of temporary custody, adjudication, or disposition in CINC proceedings.

relief. *Mireles v. Waco*, 502 U.S. 9, 9 (1991) (per curiam) (citations omitted); *see also Lawrence v. Kuenhold*, 271 F. App'x 763, 766 n.6 (10th Cir. 2008) (explaining that after Congress amended 42 U.S.C. § 1983, "the doctrine of judicial immunity now extends to suits against judges where a plaintiff seeks not only monetary relief, but injunctive relief as well"). Only two exceptions to judicial immunity exist: (1) "a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity;" and (2) "a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles*, 502 at 11–12 (citations omitted).

Plaintiffs' Complaint asserts no facts capable of supporting either exception here. Judge Bosch is the district judge presiding over the CINC case in state court. Plaintiffs' Complaint asserts various allegations against Judge Bosch including that he violated plaintiffs' constitutional rights by requiring Mr. and Mrs. Schwab to submit to drug testing and denied their due process rights during the CINC proceedings. *See*, *e.g.*, Doc. 85 ¶¶ 10, 28, 95, 102–03. All of the Complaint's allegations describe judicial actions taken by Judge Bosch in a judicial capacity and with jurisdiction to do so.[12] The allegations thus fail to state a claim against Judge Bosch, even if they allege "the action he took was in error, was done maliciously, or was in excess of his authority" because a judge is "subject to liability only when he has acted in the clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978) (citation and internal quotation marks omitted). Judicial immunity thus bars plaintiffs' claims against Judge Bosch.

*Second*, Riley County Attorney Barry Wilkerson and Deputy County Attorney Bethany Fields enjoy prosecutorial immunity. Prosecutors are absolutely immune when "initiating a

---

[12]     Kansas law confers general jurisdiction on state district court judges. Kan. Stat. Ann. § 20-302, Kan. Const. art. 3, § 6(b). Thus, consistent with Kansas law, Judge Bosch properly exercised jurisdiction over the CINC case in the District Court of Riley County, Kansas.

prosecution and in presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 430, 431 (1976). Their prosecutorial immunity is limited, however, to actions that "involve the prosecutor's role as advocate" and not "his [or her] role as administrator or investigative officer." *Burns v. Reed*, 500 U.S. 478, 491 (1991) (citation and internal quotation marks omitted).

Here, plaintiffs' Complaint never alleges that Mr. Wilkerson or Ms. Fields took any actions outside their roles as advocates for the State of Kansas in the CINC proceedings or other legal matters. Although plaintiffs allege that Mr. Wilkerson improperly prosecuted Mr. Schwab on other charges in 1999 or 2000 (doc. 85 ¶ 21), that Mr. Wilkerson and Ms. Fields "deceiv[ed] the juvenile court" by presenting false and "manufactured evidence" (*id.* ¶¶ 10, 106), and that Mr. Wilkerson and Ms. Fields "forced" Mr. and Mrs. Schwab to "surrender their fourth amendment protections under threat of termination of their parental rights" (*id.* ¶ 95), all of these actions occurred while the prosecutors performed advocacy functions on behalf of the State. A prosecutor enjoys absolute immunity for all such actions, even if they are false or misleading. *See*, *e.g.*, *Robinson v. Volkswagenwerk AG*, 940 F.2d 1369, 1372 n.4 (10th Cir. 1991) (explaining that "[w]hether the claim involves withholding evidence, failing to correct a misconception or instructing a witness to testify evasively, absolute immunity from civil damages is the rule for prosecutors"), *cert. denied*, 502 U.S. 1091 (1992). Prosecutorial immunity thus bars plaintiffs' claims against Mr. Wilkerson and Ms. Fields.

*Third*, Riley County Detective Carla Swartz enjoys witness immunity against claims based on her testimony during the CINC proceedings. Detective Swartz testified in the CINC case about her investigation into the complaint that the Schwabs were not caring properly for their children. She also testified about the State's removal of the children from the Schwabs' care based on the investigation's results. "A witness is absolutely immune from civil liability

based on any testimony the witness provides during a judicial proceeding 'even if the witness knew the statements were false and made them with malice.'" *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1196 (10th Cir. 2010) (quoting *Briscoe v. LaHue*, 460 U.S. 325, 332 (1983)). Here, plaintiffs allege that Detective Swartz deceived the state court with her testimony. Doc. 85 ¶¶ 10, 36, 102. But, even if her testimony was false, plaintiffs' claims are barred by witness immunity. *Wagner*, 603 F.3d at 1196 (holding that a witness's testimony was protected by absolute immunity "even if [it] was aimed at perpetuating the custody proceedings").

*Fourth*, defendant Lora Ingles, the court-appointed guardian ad litem for the Schwab children, enjoys immunity for acts "within the core duties of a [guardian ad litem] in assisting the court—that is, in performing a 'function [ ] closely associated with the judicial process.'" *Dahl v. Charles F. Dahl, M.D., P.C. Defined Ben. Pension Tr.*, 744 F.3d 623, 630 (10th Cir. 2014) (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985)). A guardian ad litem is not immune, however, "for acts taken in the 'clear absence of all jurisdiction.'" *Id.* (quoting *Stump*, 435 U.S. at 357). But an act does not fall outside a guardian ad litem's jurisdiction if it is "wrongful, even unlawful"—immunity still applies when an act "was [taken] in error, was done maliciously, or was in excess of . . . authority." *Id.* at 631 (quoting *Stump*, 435 U.S. at 356–57).

Plaintiffs' Complaint only asserts claims against Ms. Ingles for acts she performed in her capacity as a court-appointed guardian ad litem and in furtherance of the judicial process. *See* Doc. 85 ¶¶ 86, 88, 93, 95–96, 101–02, 105–12, 114–15, 117. Plaintiffs' allegations that Ms. Ingles presented false evidence at the CINC hearings and refused to provide the Schwabs access to documents are insufficient to deprive her of immunity, even if these acts were wrongful or unlawful. *See Dahl*, 744 F.3d at 631. Plaintiffs allege no facts capable of supporting a finding

that Ms. Ingles acted without jurisdiction or authority such that she is subject to liability.  Ms. Ingles thus is immune from liability against the claims asserted in plaintiffs' Complaint.

*Finally*, defendants Sam Brownback, Barry Wilkerson, Bethany Fields, and Carla Swartz are entitled to qualified immunity against the claims asserted against them in their individual capacities.  To avoid the qualified immunity defense on a motion to dismiss, the Tenth Circuit requires plaintiffs to "allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights, and that those rights were clearly established at the time."  *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008) (citing *Twombly*, 550 U.S. at 570).  This standard "requires enough allegations to give the defendants notice of the theory under which their claim is made."  *Id.*

Although plaintiffs' Complaint is lengthy and includes many assertions that these four defendants violated their constitutional rights, all of plaintiffs' allegations are conclusory.  Plaintiffs allege that these defendants conspired to violate their constitutional rights by removing their children from their custody, denying them due process, and running a "Kids for Cash" scheme.  *See*, *e.g.*, Doc. 85 ¶¶ 10, 28, 59–60, 128, 162.  But, plaintiffs never allege facts to support their generalized assertions against these four defendants and to show sufficiently that each defendant plausibly violated their constitutional rights.  *See Robbins*, 519 F.3d at 1249 (holding that plaintiff failed to state plausible claims for relief because "the complaint's use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction [of] what acts are attributable to whom [made] it . . . impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed.")  Without such factual allegations, the court must dismiss plaintiffs' claims against

defendants Sam Brownback, Barry Wilkerson, Bethany Fields, and Carla Swartz because they are entitled to qualified immunity.

> **b. Plaintiffs' Complaint fails to state plausible claims under § 1983 against defendants Phyllis Gilmore, Theresa Freed Barnes, and Kendra Baker in their individual capacities.**

Defendants Phyllis Gilmore, Theresa Freed Barnes, and Kendra Baker[13] assert that Plaintiffs' Complaint fails to allege that they plausibly violated plaintiffs' constitutional rights sufficient to support the § 1983 claims asserted against them in their individual capacities.[14] Plaintiffs' claims against these three defendants fail for reasons similar to those explained in the preceding section. Plaintiffs' Complaint only asserts conclusory allegations against these three defendants without alleging specific facts describing who committed what alleged unconstitutional acts to violate the rights of which plaintiff.

"In general, state actors may only be held liable under § 1983 for their own acts, not the acts of third parties." *Robbins v. Oklahoma*, 519 F.3d 1242, 1251 (10th Cir. 2008) (citing *DeShaney v. Winnebago Cty. Dep't of Social Servs.*, 489 U.S. 189, 197 (1989)). Thus, to state a plausible § 1983 claim against individual state actors, plaintiffs' Complaint must "make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as

---

[13]     Theresa Freed Barnes and Kendra Baker assert in a footnote to their Motion to Dismiss that plaintiffs never have served them in their individual capacities. Doc. 150 at 1 n.2. But, they never move to dismiss plaintiffs' individual capacity claims against them based on insufficient service of process. Instead, they assert that the court should dismiss the claims against them under Rules 12(b)(1) and 12(b)(6). *See* Docs. 149-1, 150. A party waives the defense of insufficient service of process by failing to raise it in a motion or responsive pleading. Fed. R. Civ. P. 12(h)(1). Based on Ms. Freed Barnes and Ms. Baker's request that the court dismiss plaintiffs' claims against them under Rules 12(b)(1) and 12(b)(6), they have waived insufficient service of process of plaintiffs' individual capacity claims against them.

[14]     These defendants do not argue that plaintiffs' claims are barred by qualified immunity. So, the court does not address this issue.

to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Id.* (citing *Twombly*, 550 U.S. at 564 n.10).

Plaintiffs' general and conclusory allegations fail to satisfy this standard. *See id.* at 1250 (holding that plaintiffs' complaint "fail[ed] to isolate the allegedly unconstitutional acts of each defendant, and thereby [did] not provide adequate notice [of] the nature of the claims against each of the defendants"). Plaintiffs allege generally that these three defendants conspired with the court and others to deny them their Fourteenth Amendment right to due process and their Fourth Amendment right against unreasonable searches and seizures. Doc. 85 ¶¶ 10, 32, 36, 59–60, 115–16, 128, 162. But, the Complaint contains no specific facts to support the generalized allegations against these three defendants. And, the Complaint never isolates any alleged unconstitutional conduct of each defendant to provide adequate notice of the claims against them.

Indeed, plaintiffs' Complaint states that it refers collectively to these three defendants along with more than 20 other defendants throughout the pleading as "defendants." *Id.* ¶ 70. The Tenth Circuit specifically has held that these types of generalized allegations against a collective group of defendants fail to state a claim for relief. *See Robbins*, 519 F.3d at 1250 ("Given the complaint's use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed."). For the same reasons, plaintiffs' Complaint fails to state claims for relief against defendants Phyllis Gilmore, Theresa Freed Barnes, and Kendra Baker in their individual capacities.

### c.  Plaintiffs' Complaint fails to state a plausible claim against Riley County, Kansas.

Plaintiffs allege that Riley County "is a public municipality, part of the Kansas 21st Judicial District whose officers and agents and employees are tasked with administering the services of [the] municipality in a lawful, Constitutional, and legal manner."  Doc. 85 ¶ 48.  Plaintiffs also allege that Riley County's "administrative and legal staff . . . are tasked with assuring all of its agents are operating lawfully and in a Constitutional manner within its municipal functions and scope."  *Id.*  Plaintiffs allege, generally, that Riley County conspired with other defendants to deprive them of their constitutional rights.  *See*, *e.g.*, *id.* ¶¶ 10, 28, 70.

Plaintiffs' Complaint fails to state a plausible claim against Riley County, Kansas for several reasons.  First, Riley County, Kansas is not a legal entity with the capacity to be sued.  Under Fed. R. Civ. P. 17(b), courts determine a party's capacity to be sued in federal court by examining the law of the state where the court is located.  Fed. R. Civ. P. 17(b)(3).  Kan. Stat. Ann. § 19-105 requires:  "In all suits or proceedings by or against a county, the name in which the county shall sue or be sued shall be 'The board of county commissioners of the county of _____[.]'"  Because plaintiffs have sued the County itself instead of the board of county commissioners as Kansas law requires, their claims against this defendant fail to state a claim for relief.

Second, even if plaintiffs could sue Riley County, the Complaint still fails to allege facts sufficient to state §§ 1983 and 1985 claims against it.  The Complaint asserts claims against Riley County based on its failure to supervise and oversee its subordinates and prevent them from violating plaintiffs' rights.  Doc. 85 ¶¶ 59–60.  But, plaintiffs cannot hold Riley County vicariously liable for its subordinates' actions under §§ 1983 or 1985.  *See*, *e.g.*, *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) ("Respondeat superior or vicarious liability will not attach

under § 1983."); *Howard v. Topeka Shawnee Cty. Metro. Planning Comm'n*, 578 F. Supp. 534, 538–39 (D. Kan. 1983) (holding that no vicarious liability exists for claims brought under §§ 1983 or 1985).

Also, the Complaint never identifies those subordinates and the particular actions they purportedly took to violate plaintiffs' rights.  To state a valid claim under § 1983, the Complaint must "make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice [of] the basis of the claims against him or her, as distinguished from collective allegations against the state."  *Robbins*, 519 F.3d at 1249–50.  Plaintiffs' allegations fall well short of this standard.  The Complaint thus fails to state a plausible claim for relief against Riley County, Kansas.

### d. Riley County Police Department is not a legal entity subject to suit.

In Kansas, "subordinate government agencies do not have the capacity to sue or be sued in the absence of statute."  *Hopkins v. State*, 702 P.2d 311, 316 (Kan. 1985) (holding that the Kansas Highway Patrol is a government agency not subject to suit).  Our court consistently has held that the Riley County Police Department is a "subordinate government entity" that "does not have the capacity to be sued."  *Rivera v. Riley Cty. Law Bd.*, No. 11-2067-JAR-JPO, 2011 WL 4686554, at *2 (D. Kan. Oct. 4, 2011); *see also Lowery v. Cty. of Riley*, No. 04-3101-JTM, 2005 WL 1242376, *7 (D. Kan. May 25, 2005) (concluding that no statutory authorization confers the capacity to sue and to be sued on the Riley County Police Department).  Plaintiffs thus fail to state a claim for relief against the Riley County Police Department.

e. **Plaintiffs' Complaint fails to allege state action
sufficient to subject certain defendants to liability
under § 1983.**

Several defendants assert that plaintiffs' Complaint fails to allege state action sufficient to

subject them, as private parties, to liability under § 1983. To state a claim under § 1983, a

plaintiff must allege that: (1) "some person has deprived him [or her] of a federal right;" and (2)

"the person who has deprived him [or her] of that right acted under color of state or territorial

law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (citations omitted). General, conclusory

allegations cannot state a claim for relief under § 1983. *See Robbins*, 519 F.3d at 1250 (holding

that plaintiff failed to state a § 1983 claim by making "collective allegations against the state,"

and instead, plaintiff bears the burden to "provide fair notice of the grounds for the claims made

against each of the defendants" by "isolat[ing] the allegedly unconstitutional acts [against] each

defendant" in the complaint so that the defendants know "what particular unconstitutional acts

they are alleged to have committed" (citations omitted)).

To assert a viable § 1983 claim, a plaintiff must allege sufficient facts demonstrating,

plausibly, that the private individual or entity's conduct allegedly causing a constitutional

deprivation is "fairly attributable to the state." *Scott v. Hern*, 216 F.3d 897, 906 (10th Cir. 2000)

(citations and internal quotation marks omitted). The Tenth Circuit has applied four different

tests to determine if a private entity is subject to liability under § 1983 as a state actor: the nexus

test, the symbiotic relationship test, the joint action test, and the public function test. *Gallagher

v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995).

The nexus test requires a "sufficiently close nexus between the government and the

challenged conduct" and, in most cases, renders a state liable for a private individual's conduct

"only when [the State] has exercised coercive power or has provided such significant

encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Id.* at 1448 (citations and internal quotation marks omitted). The symbiotic relationship test asks whether the state "has so far insinuated itself into a position of interdependence with a private party that it must be recognized as a joint participant in the challenged activity." *Id.* at 1451 (citations and internal quotation marks omitted). The joint action test requires courts to "examine whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Id.* at 1453 (citations omitted). Finally, the public function test asks whether the challenged action is "a function traditionally exclusively reserved to the State." *Id.* at 1456 (citations and internal quotation marks omitted).

No matter which test is invoked, plaintiffs' Complaint asserts no facts to state a plausible claim against several defendants—who are private actors—for conduct that was "fairly attributable to the state." These defendants include: (1) KVC, a private entity that contracts with DCF to provide social services to families (doc. 85 ¶ 66); (2) Rhonda Eisenbarger, a KVC case manager assigned to plaintiffs' case (*id.* ¶ 68); (3) Deja Jackson, a KVC family support worker assigned to plaintiffs' case (*id.* ¶ 67); (4) Pathways Family Health Services ("Pathways"), a private entity that operates a residential treatment facility where one of the Schwab children was placed (*id.* ¶¶ 32, 120–21); (5) Pawnee Mental Health Services ("Pawnee"), a private non-profit corporation that contracts with DCF to provide mental health services and that provided such services to one of the Schwab children (*id.* ¶¶ 32, 58); (6) Andrew Vinduska, the court-appointed lawyer who represented Mr. Schwab in the CINC case (*id.* ¶ 55); (7) Miranda Johnson, the court-appointed lawyer who represented Mrs. Schwab in the CINC case (*id.* ¶ 56);[15] (8) Lora Ingles,

---

[15]     Generally, "a lawyer representing a client is not, by virtue of being an officer of the court, a state actor 'under color of state law' within the meaning of § 1983." *Polk Cty. v. Dodson*, 454 U.S. 312, 318 (1981).

the court-appointed guardian ad litem to plaintiffs' minor children (*id.* ¶ 53);[16] (9) St. Francis Community Services ("St. Francis"), a private non-profit corporation that contracts with DCF to provide family services (*id.* ¶ 61); (10) Kathy Boyd, a supervisor with St. Francis (*id.* ¶ 64; doc. 85-1 at 2; 85-2 at 1; (11) Laura Price, a social worker with St. Francis (doc. 85 ¶ 63; doc. 85-1 at 2; 85-2 at 1); and (12) Sunflower CASA Project, a private non-profit corporation that the Riley County District Court appointed to serve the children's best interests in the CINC case (doc. 85 ¶ 30; *see also id* at 1).

Plaintiffs' Complaint asserts, generally, that defendants KVC, St. Francis, Deja Jackson, Rhonda Eisenbarger, Kathy Boyd, Laura Price, Andrew Vinduska, Miranda Johnson, Lora Ingles, Sunflower CASA Project, Pawnee, and Pathways "worked in conjunction with State Actors" to violate their constitutional rights. *Id.* ¶ 28. Plaintiffs thus assert that these defendants are state actors under the joint action test. *Id.* Plaintiffs also assert that these defendants are state actors because they conspired with state agencies and officials to violate their rights. *Id.* And, plaintiffs' Complaint contains many assertions that defendants were "acting under color of state law." *See*, *e.g.*, *id.* ¶¶ 25–28, 36, 39, 67, 72, 105, 121, 141, 162. But, plaintiffs' Complaint never alleges any facts to support any of these conclusory allegations.

To state a plausible § 1983 claim against private entities or individuals under the joint action test, the Complaint must include facts alleging that they adopted "a specific goal to violate the plaintiff's constitutional rights by engaging in a particular course of action." *Gallagher*, 49 F.3d at 1455. Without such allegations, a plaintiff fails to allege facts sufficient to establish that a private actor was acting under color of state law, as plaintiffs must to state a viable claim under § 1983. *See Sooner Prods. Co. v. McBride*, 708 F.2d 510, 512 (10th Cir. 1983) ("When a plaintiff

---

[16] A guardian ad litem is not acting under color of state law for purposes of § 1983 because "her undivided loyalty is to the minor, not the state." *Meeker v. Kercher*, 782 F.2d 153, 155 (10th Cir. 1986).

in a § 1983 action attempts to assert the necessary 'state action' by implicating state officials or judges in a conspiracy with private defendants, mere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action."); *see also Fisher v. Lynch*, 531 F. Supp. 2d 1253, 1264 (D. Kan. 2008) (holding that "plaintiff [had] not alleged facts which tend to show agreement and concerted action between [a private individual and a state actor], he has not sufficiently alleged that [the private individual] acted under color of state law").

Here, plaintiffs' Complaint fails to assert facts sufficient to support its conclusory allegations of state action. Plaintiffs' Complaint thus fails to state plausible claims against these defendants—as private actors—under § 1983.

### f. Plaintiffs' Complaint fails to allege plausible conspiracy claims under § 1985.

Section 1985 prohibits persons from conspiring "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). A conspiracy claim under § 1985 "requires at least a combination of two or more persons acting in concert and an allegation of a meeting of the minds, an agreement among the defendants, or a general conspiratorial objective." *Brooks v. Gaenzle*, 614 F.3d 1213, 1227–28 (10th Cir. 2010) (citations omitted). Mere conclusory allegations of conspiracy do not suffice to state a valid claim under § 1985. *Hogan v. Winder*, 762 F.3d 1096, 1114 (10th Cir. 2014) (affirming district court's dismissal of § 1985 claims because plaintiff had failed to plead the requisite meeting of the minds).

Plaintiffs' Complaint asserts purely conclusory allegations that fail to state a plausible claim under § 1985. Plaintiffs allege that defendants conspired against them, generally, but the

Complaint pleads no facts sufficient to demonstrate a meeting of the minds or an agreement among defendants, or a general conspiratorial objective. Also, to state a plausible § 1985 claim, a plaintiff must allege class-based or racially discriminatory animus. *See Jones v. Norton*, 809 F.3d 564, 578 (10th Cir. 2015) ("Among other elements, [§ 1985(2) and (3)] require a showing of 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)). Plaintiffs' Complaint never asserts allegations of class-based or racially discriminatory animus, a requirement to assert a § 1983 claim.

Plaintiffs' Complaint thus fails to state a plausible § 1985 claim against all defendants. *See*, *e.g.*, *Phillips v. Kerns*, 483 F. App'x 400, 403 (10th Cir. 2012) (affirming dismissal of § 1985 claim because the Complaint failed to allege a racial or class-based discriminatory animus); *Crawford v. Kan. Dep't for Children and Families*, No. 12-2767-JTM, 2013 WL 4431262, at *1 (D. Kan. Aug. 16, 2013) (granting motion to dismiss because the complaint asserted "no allegations of discrimination or conspiracy which would support a claim under 42 U.S.C. § 1985").

### 5. Plaintiffs' State Law Claims

Under 28 U.S.C. § 1367(c), the court may decline to exercise supplemental jurisdiction over state law claims if it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The decision whether to exercise supplemental jurisdiction is one committed to a district court's sound discretion. *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1138–39 (10th Cir. 2004). Section 1367 "reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness and

comity.'" *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172–73 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ.*, 484 U.S. at 350 n.7; *see also Tonkovich v. Kan. Bd. of Regents*, 254 F.3d 941, 945 (10th Cir. 2001) (holding that where pretrial proceedings and discovery have not commenced in earnest, "considerations of judicial economy, convenience, and fairness do not favor retaining jurisdiction" (citations and internal quotation marks omitted)). Also, "[n]otions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." *Thatcher Enters. v. Cache Cty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990).

Here, the court has dismissed every claim against defendants which it had original jurisdiction to decide. And, plaintiffs' state law tort claims are closely intertwined with the CINC proceedings in state court. These claims arise out of the alleged wrongs they contend defendants have committed during those proceedings. Thus, every consideration of judicial economy, convenience, fairness, and comity weigh against the court's exercise of supplemental jurisdiction over plaintiffs' state law claims. The court thus exercises its discretion and declines to exercise supplemental jurisdiction over plaintiffs' state law claims.

### III. Conclusion

In sum, the court dismisses plaintiffs' §§ 1983 and 1985 claims for several reasons:

- The claims against defendants Randy Debenham and Blake Robinson are dismissed without prejudice based on plaintiffs' voluntary dismissal.

- Eleventh Amendment immunity bars plaintiffs' claims against the State of Kansas and DCF.

- Eleventh Amendment immunity bars plaintiffs' official capacity claims for money damages against defendants Sam Brownback, Barry Wilkerson, Bethany Fields, Phyllis Gilmore, Theresa Freed Barnes, Kendra Baker, and John Bosch.

- The *Younger* doctrine precludes the court from exercising jurisdiction over plaintiffs' claims for equitable relief against all defendants. The court thus dismisses plaintiffs' equitable claims without prejudice.

- The *Rooker-Feldman* doctrine precludes the court from exercising jurisdiction over plaintiffs' claims challenging any final orders in the CINC proceeding. The court thus dismisses those claims—seeking both equitable relief and money damages—without prejudice.

- To the extent the *Rooker-Feldman* doctrine does not bar any of plaintiffs' claims for money damages, the claims fail to state plausible claims for relief against each defendant moving for dismissal for the following reasons:

  - Defendant John Bosch enjoys judicial immunity.

  - Defendants Barry Wilkerson and Bethany Fields enjoy prosecutorial immunity.

  - Defendant Carla Swartz enjoys witness immunity.

  - Defendant Lora Ingles is immune from suit for her actions taken as a guardian ad litem.

  - Defendants Sam Brownback, Barry Wilkerson, Bethany Fields, and Carla Swartz are entitled to qualified immunity.

- Plaintiffs' Complaint fails to state plausible claims under § 1983 against defendants Phyllis Gilmore, Theresa Freed Barnes, and Kendra Baker in their individual capacities.

- Plaintiffs' Complaint fails to state a plausible claim against defendant Riley County, Kansas.

- Defendant Riley County Police Department is not a legal entity subject to suit.

- Plaintiffs' Complaint asserts no plausible §1983 claims against defendants KVC, Rhonda Eisenbarger, Deja Jackson, Pathways Family Services, LLC, Pawnee Mental Health Service, Andrew Vinduska, Miranda Johnson, Lora Ingels, St. Francis Community Services, Kathy Boyd, Laura Price, and Sunflower CASA Project because the Complaint fails to allege facts sufficient to subject these defendants to § 1983 liability as state actors.

- Plaintiffs' Complaint asserts no plausible § 1985 claim against any defendant.

For all these reasons, the court dismisses plaintiffs' §§ 1983 and 1985 claims—the only federal claims asserted in this lawsuit. The court declines to exercise supplemental jurisdiction over the remaining state law claims. The court thus grants defendants' motions to dismiss.

The court notes that it already has afforded plaintiffs an opportunity to amend their complaint, but yet their Revised Second Amended Complaint (Doc. 85) still fails to plead "factual content" that allows the court to "draw the reasonable inference that the defendant[s] [are] liable" for plaintiffs' asserted federal claims. *Iqbal*, 556 U.S. at 678. When the court

granted plaintiffs leave to file an amended pleading, the court cautioned that they had "one, final opportunity to file an Amended Complaint—one that addresses all of the concerns raised by the court in this Order." Doc. 79 at 18. The court also explained to plaintiffs that their amended pleading "must plead *facts*" to state plausible claims "against each defendant that they name in their lawsuit." *Id.* The court also warned that "it anticipates granting no further motions for leave to file an Amended Complaint in this case." *Id.* Despite these admonitions, plaintiffs' Revised Second Amended Complaint fails to cure the deficiencies the court had identified. The court thus dismisses plaintiffs' Complaint for all the reasons stated above.

**IT IS THEREFORE ORDERED THAT** defendants KVC, Rhonda Eisenbarger, and Deja Jackson's Second Motion to Dismiss (Doc. 105), defendants St. Francis Community Services and Kathy Boyd's Motion to Dismiss (Doc. 113), defendant Lora Ingles' Second Motion to Dismiss (Doc. 115), defendant Miranda Johnson's Motion for Judgment on the Pleadings, or in the Alternative, Motion to Dismiss (Doc. 118), defendants Kansas Department for Children and Families, Phyllis Gilmore, Theresa Freed Barnes, and Kendra Baker's Motion to Dismiss (Doc. 149), defendants State of Kansas, Governor Sam Brownback, Barry Wilkerson, Bethany Fields, Riley County Police Department, Carla Swartz, and Pathways Family Services, LLC's Motion to Dismiss (Doc. 151), defendant John Bosch's Motion to Dismiss (Doc. 153), defendant Laura Price's Motion to Dismiss (Doc. 163), defendant Pawnee Mental Health Services, Inc.'s Motion to Dismiss (Doc. 169), defendant Andrew Vinduska's Motion to Dismiss (Doc. 173), defendant Riley County, Kansas' Motion to Dismiss (Doc. 181), and defendant Sunflower CASA Project, Inc.'s Motion to Dismiss (Doc. 189) are granted.

**IT IS FURTHER ORDERED THAT** plaintiffs' Motion to Dismiss Parties Randy Debenham, Miranda Johnson, Blake Robinson, and Andrew Vinduska (Doc. 194) is granted in

part and denied in part.  The court grants the motion to dismiss Mr. Debenham and Mr. Robinson

without prejudice.  The court denies the motion to dismiss Ms. Johnson and Mr. Vinduska to the

extent it seeks a dismissal without prejudice.

   **IT IS FURTHER ORDERED THAT** defendants Randy Debenham and Blake

Robinson's Motion to Dismiss (Doc. 183) is denied as moot.

**IT IS SO ORDERED.**

**Dated this 30th day of June, 2017, at Topeka, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
